# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| RAUL ANTHONY CUELLAR, 1251912, ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | No. 3:08-CV-1391-O |
| ) | |
| RICK THALER, ) | |
| Director TDCJ-CID, ) | |
|     Respondent. ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Procedural Background**

On August 5, 2004, Petitioner was convicted of two charges of aggravated sexual assault. *State of Texas v. Raul Anthony Cuellar*, Nos. F-0341449-PS and F-0440329-VS. He was sentenced to twenty-five years imprisonment on each charge, to be served concurrently. On October 11, 2006, the Fifth District Court of Appeals affirmed the convictions. *Cuellar v. State*, Nos. 05-04-01226-CR and 05-04-01227-CR (Tex. App. – Dallas, Oct. 11, 2006, no pet.).

On August 14, 2006, Petitioner filed two state petitions for writ of habeas corpus. *Ex parte Cuellar*, Application Nos 66,135-01 and -02. On November 8, 2006, the Court of Criminal Appeals dismissed the petitions on procedural grounds. On January 8, 2007, Petitioner filed two

more state habeas applications. *Id*. at -03 and -04. On July 30, 2008, the Court of Appeals denied the petitions without written order.

On August 6, 2008, Petitioner filed this federal petition. He argues:

(1) He received ineffective assistance of counsel because counsel failed to investigate, prepare a viable defense and contact and present defense witnesses;

(2) He received ineffective assistance of appellate counsel when counsel failed to present certain issues on appeal and in the motion for new trial, and failed to inform the court of the standard of review;

(3) His confession was involuntary; and

(4) The trial court erred when it admitted his confession into evidence and when it applied the wrong standard of review to his motion for new trial.

## II. Factual Background

The following factual background is taken from the opinion of the Fifth District Court of Appeals.

> [Cuellar] and his wife at the time, Deborah Aikman, took in Aikman's niece, A.R., when A.R. was approximately eight years old. A.R. had moved back and forth between her mother and various foster homes before moving in with [Cuellar] and Aikman. A.R.'s mother has battled an ongoing drug addiction problem. For approximately four years, A.R. lived with [Cuellar] and Aikman when Aikman's bipolar condition forced her into residential treatment. From that point until [Cuellar's] arrest, A.R. lived alone with Cuellar.
>
> In October 2003, when A.R. was thirteen years old, she and her sixteen-year-old friend, Misty Kempf, asked [Cuellar] if she could spend the night with Misty. A.R. alleges that [Cuellar] said, "[I]f you give me a helmet wash, then you can go stay the night." A.R. testified she understood the term to mean "to give him head," that is, put appellant's penis in her mouth. Misty testified at trial that she heard the comment as well, though the record indicates that her written statement to police given two days after the incident does not make this allegation. At trial, Misty testified that she did not understand what the term meant and A.R. would not explain it. Misty testified that a

short while later, A.R. began crying and told Misty what appellant meant. A.R. told Misty that appellant coerced her on several occasions into performing oral sex on him and, less frequently, allowing appellant to perform oral sex on her. Misty testified that A.R. told her not to tell Misty's mother, Angela Kempf, but she immediately did upon returning home that evening.

The following day, a Saturday, Angela persuaded appellant to allow A.R. to stay over with Misty in an attempt to get A.R. out of [Cuellar's] home. On Sunday, A.R. stayed at the Kempf's house and Angela called Child Protective Services to report what A.R. had told her. Angela then went to work, and in the afternoon, [Cuellar] came looking for A.R. When the two girls did not answer the door for [Cuellar], he began banging on the windows and shouting. The girls called Angela at work, who called the Mesquite Police Department. By the time the police were dispatched to the Kempf's residence, [Cuellar] had left. A.R. informed the police at that time about her allegations of sexual abuse by [Cuellar]. The police later picked him up at the home where [Cuellar] and A.R. lived.

[Cuellar] was questioned for approximately three hours by Detective Michael Holley of the Sexual Assault Unit of the Mesquite Police Department. [Cuellar] contends that he asked for an attorney eight times during the questioning but was ignored. Detective Holley testified that [Cuellar] never asked to see an attorney. The interview was not audio or videotaped; Detective Holley testified that such interviews are never taped by the Mesquite Police Department. At trial, the State produced a *Miranda* warning card signed by [Cuellar] at the beginning of the interview. Detective Holley testified that [Cuellar] expressed remorse about the incident during the questioning and "that he was not a monster. Those were his words." However, during the State's rebuttal case, Detective Holley testified, "It's not uncommon for me to bring up the word "monster" in an interview with a defendant who's accused of a sexual offense . . . . I routinely use that word in an interview . . . ." During the interview, the detective prepared the following written statement for [Cuellar's] signature based on his understanding of [Cuellar's] oral statements. [1]

One night I came home and I was intoxicated in my room on my bed. I woke up and [A.R.] was sucking my dick. She just got up from sucking my dick. I was embarrassed – I thought it was my wife Debra – when I opened my eyes, I realized it was my daughter [A.R.]. I asked her where she learned this and she said from a couple of guys in Garland with her girlfriend. This happened after a Christmas party last year at our house on Long Creek.

When presented with this written statement, [Cuellar] declined to sign it and

---

[1] Detective Holley claims the statement was taken down verbatim. [Cuellar] disputes that these were his words.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**     Page -3-

wrote o**ut** his own statement:

> One night I came home, I was intoxicated. I passed out on my bed. I was dreaming of having sex with my wife Deborah, I woke up and [A.R.] got up. She was sucking on me. I was embarrassed. I asked her what she was doing, she said she had done several guys in Garland, at the apartments, while I was working with her friend Laura.

> This statement was signed by [Cuellar]. Detective Holley and two civilian employees of the police department testified that [Cuellar] stated he meant A.R. was sucking on his penis in his written statement. [Cuellar] contends he meant A.R. was sucking on his ear. The signed statement was offered as State's Exhibit #2, and the unsigned statement was offered as State's Exhibit #3. [Cuellar] objected timely to the admission of both statements. The trial judge overruled [Cuellar] with respect to State's Exhibit #2, the statement signed by [Cuellar], but initially sustained his objection to State's Exhibit #3, the unsigned statement written by Detective Holley. Later, the trial judge admitted the unsigned statement for purposes of impeaching [Cuellar] regarding what [Cuellar] mean when he said A.R. had been sucking on him.

*Cuellar v. State*, Nos. 05-04-01226-CR and 05-04-1227-CR at 2-4.

### III. Discussion

### 1. Standard of Review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the

writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.

**2**.     **Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'"

*Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### (a) Trial Counsel

Petitioner argues his counsel failed to conduct a proper investigation and failed to contact defense witnesses. Petitioner states he provided his trial counsel with a list of twenty-three witness to contact, but his counsel failed to contact these people and/or call them at trial.

Petitioner raised this claim in his motion for new trial. At the hearing on his motion for new trial, seven witnesses testified for Petitioner. Each of the witnesses stated the complainant had a reputation in the community as a liar. Of these seven witnesses, three testified at the guilt-innocence phase of the trial and one testified during the punishment phase. None of the witnesses were fact witnesses.

Defense counsel also testified at the motion for new trial. He testified that, based on trial strategy, he did not call witnesses to testify that complainant had a reputation in the community as a liar. He stated:

> The only evidence these witnesses would have provided was that the victim was lying – well, the victim was a liar. Since the testimony of the victim was corroborated by two other witnesses, I did not feel like it was – was a good idea to slime the victim with people coming saying she was a liar because of the corroboration.
>
> * * *
>
> The defendant's witnesses only indicated that they were – they – they didn't like [the complainant] . . . they didn't like her. She was a slut. She was a liar. . . . . Plus again, we had corroboration from two other witnesses. And with corroboration, all we would be doing is just sliming the victim for no good reason. And then the jury would take it out on us and maybe the judge would take it out on us when it came time for him to stack the sentences.

(Mot. for New Tr. Vol. 4 at 6, 15.)

Defense counsel has stated legitimate trial strategy reasons for not calling these witnesses

to testify regarding the complainant's reputation for truthfulness. Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy. *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

Finally, to the extent Petitioner alleges his counsel was ineffective for failing to contact or call any other witnesses, he has failed to show that any such witness would have testified favorably for the defense. As the Fifth Circuit has stated, "hypothetical or theoretical testimony will not justify the issuance of a writ . . . ." *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986). Petitioner's claims should be denied.

### (b) Appellate Counsel

Petitioner argues his appellate counsel was ineffective during the motion for new trial and on appeal. He argues his counsel failed to argue that the court applied the wrong standard of review on his motion for new trial. At the close of the hearing on the motion for new trial, the court stated simply that it denied the motion. Petitioner has failed to submit any evidence that the court applied an incorrect standard to deny the motion. His counsel was not required to make a frivolous motion regarding the standard of review. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

Petitioner also claims that, on appeal, appellate counsel failed to cite cases from other jurisdictions and failed to adequately argue his ineffective assistance of counsel claims. Petitioner has failed to show that his counsel's failure to cite non-binding cases from other jurisdictions rendered her performance ineffective.

In arguing that his appellate counsel failed to adequately argue his ineffective assistance claims, Petitioner states appellate counsel should have argued that if trial counsel had contacted

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**       Page -7-

all twenty-three of his witnesses, it is possible that one of the witnesses would have testified that the complainant told him/her that she had fabricated the charges against Petitioner. Petitioner's claim regarding hypothetical testimony is insufficient to show that he received ineffective assistance of counsel. *See Martin*, 796 F.2d at 819. This claim should be denied.

**3.     Statements**

Petitioner argues the trial court erred in admitting his two statements because the state failed to comply with Texas Code of Criminal Procedure 38.22 and because admission of the statements violated his due process rights.

**(a) Due Process**

Petitioner argues that he signed the written statement involuntarily. He claims he was coerced by police officers into signing the statement. He states he was afraid the officers would become violent if he did not sign the statement. (Pet. Mem at 13.) The Fifth Circuit has stated that unsupported conclusory allegations that police officers coerced a confession, without any evidence in support, do not warrant federal habeas corpus relief. *Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987). Petitioner's claim on this point is wholly conclusory and he offers no evidentiary basis to support it. His claim should be denied.

**(b) Code of Criminal Procedure**

Petitioner argues his statements should have been excluded under article 38.22 of the Texas Code of Criminal Procedure. That statute states that no oral statement of an accused shall be admissible unless an electronic recording of the statement is presented. *See* TEX. CODE CRIM PROC. art. 38.22 § 3(a) (West 2003). However, where a defendant testifies, the unrecorded statement may be admitted to impeach the defendant's trial testimony. *Id.* at § 5. In this case,

the statements were not admitted during the state's case-in-chief, but were only admitted as rebuttal testimony after Petitioner testified. (Trial Tr. Vol. 4 at 100-101.) This claim should be denied.

**4.    Trial Error and Cumulative Error**

Petitioner argues the trial court erred when it applied the wrong standard of review. As discussed above, this claim is conclusory and should be denied.

Petitioner also argues his petition should be granted based on cumulative error of the above claims. As discussed above, these claims are without merit. This claim should therefore also be denied.

**5.  Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 30th day of December, 2010.

_____
**PAUL D. STICKNEY**
**UNITED STATES MAGISTRATE JUDGE**

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).